# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Nos. 17-271 & 18-41 |
| | ) | Judge Nora Barry Fischer |
| IKLAS DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

AND NOW, this 12th day of June, 2018, upon consideration of Defendant Iklas Davis' Motion to Vacate Orders of Detention, (Crim. No. 17-271, Docket No. [37]), the Government's Response in opposition thereto (Crim. No. 17-271, Docket No. [39]) and after conducting a *de novo* review of the detention order issued by United States Magistrate Lisa Pupo Lenihan on November 27, 2017, (Crim. No. 17-271, Docket No. [25]), including a review of the evidence presented to Magistrate Judge Lenihan during the detention hearing held on November 20, 2017, consisting of the Bond Report prepared by Pretrial Services, Government Exhibits 1-5, (Crim. No. 17-271, Docket Nos. 39-1:39-5), and the transcript of the proceedings before Magistrate Judge Lenihan on November 20, 2017, (Crim. No. 17-271, Docket No. 37-2), during which the Government presented the testimony of Special Agent Brian Chomicki of the U.S. Secret Service and the defense presented the testimony of Kendralla Rochelle, the mother of his fiancé, Quinyahta Rochelle, and counsel's proffer of supporting character letters, photographs and employment related exhibits, which were summarized by Magistrate Judge Lenihan in her findings, and the subsequent order entered by Magistrate Judge Lenihan on April 2, 2018 at Criminal No. 18-14 granting the Government's motion for detention "pending further

consideration if and when the issue of bond becomes relevant," (Crim. No. 18-41, Docket No. 16),

IT IS HEREBY ORDERED that Davis' Motion [37] is DENIED. In so holding, the Court makes the following findings:

1. Davis' request for an evidentiary hearing before this Court is denied because the evidentiary record as to the issue of pretrial detention was fully developed before Magistrate Judge Lenihan, *see United States v. Delker*, 757 F.2d 1390 (3d Cir. 1985), and "[t]his court may make its independent determination" on the issue of pretrial detention "based solely upon the evidence introduced at the prior hearing." *United States v. Burgess*, 2008 WL 2038148 at *2 (W.D. Pa. Jul. 8, 2009) (McVerry, J.) (quoting *United States v. Farris*, 2008 WL 1944141, at * 7 (W.D. Pa. 2008)). Further, Davis has not proffered any additional evidence which was not presented to Magistrate Judge Leinhan and would support his requested release on bond such that a detention hearing before this Court is unnecessary.

2. This Court agrees with Magistrate Judge Lenihan's determination that there is probable cause to believe that Davis committed the offense charged in the Indictment at Criminal No. 17-271, i.e., possession of firearms and ammunition on July 27, 2016 in violation of 18 U.S.C. § 922(g)(1), based on the grand jury's return of same. *See United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986) ("an indictment is a sufficient substitute for a preliminary hearing to establish probable cause."); *see also United States v. Gibson*, 481 F. Supp. 2d 419, 422 (W.D. Pa. 2007) (citing *Suppa*). On this date it is alleged that, despite his prior felony status, Davis was unlawfully in

possession of all of the following: a Black Rain Ordinance, model Fallout 15 rifle, .223 caliber and .223 caliber ammunition; a Ruger, model LCP, pistol, .38 caliber and .38 caliber ammunition; and a Taurus, model 856 Hy-Lite Revoler, .38 special, and .38 caliber ammunition. (Crim. No. 17-271, Docket No. 1). Similarly, the grand jury's return of the second indictment filed at Criminal No. 18-41 provides probable cause that he committed another violation of 18 U.S.C. § 922(g)(1) on October 13, 2017, by possessing a Ruger .45 caliber pistol and .45 caliber ammunition. (Crim. No. 18-41, Docket No. 1).

3. Given the nature of the charges, there is no presumption of detention in this case, with the Government retaining the burden to demonstrate by clear and convincing evidence that there are no conditions or combination of conditions which will reasonably assure the appearance of the person as required and the safety of any other person and the community. 18 U.S.C. §§ 3142(e)(1), (f)(e).

4. The Court further agrees with Magistrate Judge Lenihan's conclusion that the Government has presented clear and convincing evidence that pretrial detention was and is appropriately ordered. *See United States v. Gibson*, 481 F. Supp. 2d 419 (W.D. Pa. 2007) (quoting 18 U.S.C. § 3142(f)) ("the facts employed to support detention must 'be supported by clear and convincing evidence.'"). In reaching these decisions, the Court has conducted an independent examination of the record evidence and balanced the four factors set forth under 18 U.S.C. § 3142(g), i.e.,

    a. The nature and circumstances of the offenses charged;

    b. The weight of the evidence against the person;

c. The history and characteristics of the person; and,

d. The nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

This Court finds that, on balance, the evidence presented at the detention hearing favors the Government on each of these cited factors.

5. First, Davis has been indicted for two serious firearms offenses, the convictions for which subject him to up to 10 years' incarceration at each count, for a total of up to 20 years' incarceration. *See* 18 U.S.C. § 922(g)(1). The grand jury alleges that Davis possessed two rifles, a pistol and ammunition for each firearm on June 27, 2016 upon the execution of a state search warrant at his residence and that he possessed another pistol and ammunition on October 13, 2017, when a federal search warrant was executed at his residence. (*See* Crim. No. 17-271, Docket No. 1; Crim. No. 18-41, Docket No. 1). As such, this factor weighs against Davis.

6. Second, the evidence presented by the Government at the detention hearing, including the testimony of Special Agent Brian Chomicki and the admitted exhibits, appears to be strong regarding both firearms offenses. (Docket No. 37-2). It is uncontested that Davis was previously convicted of a felony, making his knowing possession of any firearm or ammunition a violation of 18 U.S.C. § 922(g)(1). The Government proffers that Defendant allegedly made statements implicating himself as to the possession of firearms during both of the searches at the residence. With respect to the first search on July 27, 2016, Davis allegedly told Detective Ellis upon their entry that there was a "gun in the nightstand," and the agents subsequently

4

located a Taurus .38 special, loaded with 6 rounds of .38 ammunition in that location. (Govt. Ex. 1, Docket No. 39-1). Davis was read his *Miranda* rights and asked to talk to his lawyer prior to any questions but volunteered that he had been shot 13 times, showed the law enforcement officers his wounds and said he needed to protect himself. (*Id.*). He also allegedly made a comment to officers that if he hadn't heard and seen the SWAT team, he would have found his firearm and started shooting to protect himself. (Govt. Ex. 2, Docket No. 39-2). In addition, Davis' fiancé signed a waiver of rights form and voluntarily spoke to agents, telling them that the pistol and one of the rifles seized by the officers during the search belonged to her parents. (Govt. Ex. 1, Docket No. 39-1). According to agents, upon hearing this exchange, Defendant interjected that the firearms were his own. (*Id.*).

As to the October 12, 2017 search, Davis purportedly waived his *Miranda* rights, executed a waiver of rights form and provided a lengthy statement to the responding agents. (Govt. Ex. 4, Docket No. 39-4). This questioning largely focused on Davis' alleged engagement in offenses with which he has yet to be charged federally and are more fully discussed in the next section below. (*Id.*). But, when asked if there was anything else illegal in the house, David told the officers that there was a firearm in the master bedroom closet. (*Id.*). He allegedly said that he picked up the firearm when he heard something this morning and then put it back when he realized that it was the police at the house. (*Id.*). He explained that the firearm was his cousin's, that they were recently at a shooting range together, and the cousin left the firearm at the house. (*Id.*). When reminded that his possession of the firearm was illegal, Davis

5

stated that he needed the firearm for protection and that "he goes to the range to ensure he can hit what he is shooting at." (*Id.*).

Overall, while recognizing that Davis is presumed innocent of the charged offenses, and has separately moved to suppress the evidence including his statements, the weight of the evidence against him as presented by the Government to this point is strong and favors pretrial detention.

7. Third, with respect to his history and characteristics, Davis introduced character letters from friends and family as well as his testimony from his fiancé's mother supporting his request for release on bond. (Docket No. 37-2). His counsel also proffered additional supporting facts at the hearing, without objection from the Government. (*Id.*). This evidence shows that Davis is 36 years old, is a high school graduate and subsequently earned an associate's degree. *See Bond Report dated 10/13/17*. Davis has some employment history working in event planning and an intact family unit with fiancé Quinyahta Rochelle and their children, whom he supports and participates in their activities, including coaching youth sports. (*Id.*). Ms. Rochelle, however, is also facing charges in this district at Crim. No. 17-277 for being a felon in possession of the same firearms and ammunition as Davis on July 27, 2016. More recently, she has also been charged by the U.S. Attorney in an Information at Crim. No. 18-177 with: conspiracy, 18 U.S.C. § 371; use of unauthorized access devices, 18 U.S.C. § 1029(a)(2); wire fraud, 18 U.S.C. § 1343; aggravated identity theft, 18 U.S.C. § 1028A(a)(1); and, accessing protected computers without authorization, 18 U.S.C. § 1030(a)(2). She also has a prior case in this District,

wherein she pled guilty to one count of bank fraud, in violation of 18 U.S.C. § 1344(1) and was sentenced to 21 months' imprisonment, followed by 5 years' supervised release and was ordered to pay restitution in an amount of $10,500.00. (*See United States v. Quinyahta L. Rochelle*, Crim. No. 06-275).

Davis' prior criminal history includes a felony conviction for theft by unlawful taking in the Court of Common Pleas for which he was sentenced to 137 days' to 23 months' incarceration. *See* CP 03179-2000. The Bond Report reveals that he has numerous prior misdemeanor convictions and has been sentenced to prison on other occasions, including for violations. *See* CP 01940-2002 (3 months' to 12 months' incarceration for misdemeanor unlawful use of automobile); CP 14559-2004 (on revocation, sentenced to 312 days' incarceration). As pointed out by Judge Lenihan, most troubling is Davis' penchant for engaging in criminal conduct while under some form of court supervision. *See Bond Report*. Indeed, there are 10 references on the Bond Report of Davis allegedly committing offenses while under some form of supervision. *(Id.).* Although some of those charges were nolle prossed or resulted in not guilty verdicts, the more recent episodes demonstrate that Davis is unlikely to abide by any conditions which this Court may impose and will continue to engage in criminal conduct posing a risk of harm to the community.

To this end, on the date of the execution of the first search warrant at his residence, i.e., July 27, 2016, Davis was on bond facing charges of sexual assault and IDSI forcible compulsion in state court. (*See Bond Report*, CP 14687-2015). Again, the purpose of the search warrant was to seize evidence of his alleged involvement in

an identity theft ring and at which time the three firearms and ammunition were seized which have now been adopted for federal prosecution. (Docket No. 44-2). While the sexual assault and IDSI charges resulted in a not guilty verdict, Davis was charged in state court with firearms related offenses and released on bond when the federal search warrant was executed on October 12, 2017. (*See Bond Report*, CP 12094-2016). During this search, an additional firearm was located in the residence. (Govt. Ex. 4). The agents also seized what the Government describes as significant evidence of the identity-theft scheme, and a significant quantity of heroin. (*Id.*). At this time, Davis supposedly provided a lengthy statement to agents, describing his involvement in the identity-theft scam, admitting to delivering cocaine, and frequenting a firing range to practice shooting. (*Id.*).

Davis suggests that he be released to his former residence and his fiance's mother has agreed to be a third party custodian for him. (Docket No. 37; 37-2 at 35-36). However, as is noted above, the Government has countered with strong evidence that Davis was engaged in significant criminal conduct while residing at that residence, along with his fiancé who also faces very serious criminal charges in this Court, including possessing the same firearms despite her own status as a felon and engaging in the identity theft/fraud scheme. (*See* Govt. Exs. 1-5; Crim. Nos. 17-277 & 18-177). Further, the mere fact that a relative or other individual is willing to serve as a third party custodian for a defendant is not sufficient to justify release on such conditions but is among the factors to be considered when evaluating whether release or detention is appropriate in a given case. *See United States v. Bratcher*, Crim. No. 14–

28, 2014 WL 1371582 (W.D.Pa. Apr. 8, 2014) (Conti, C.J.). Overall, this factor also weighs in favor of the Government.

8. The evidence as to the fourth and final factor likewise favors pretrial detention in this case. *See* 18 U.S.C. § 3142(g)(4). As Judge Lenihan noted, the most problematic aspect of Davis' case is his inability to adhere to court conditions and continued commission of offenses while on pretrial release. (Docket No. 37-2 at 34-37). In fact, it appears that Davis' criminal conduct escalated in the months prior to his detention, as he was allegedly involved in identity theft, cocaine trafficking and continued unlawful possession and use of firearms, despite the interdiction of law enforcement in July of 2016. (*See Bond Report*; Govt. Exs. 1-5). Hence, the Court concurs with Judge Lenihan's assessment that there are no conditions or combination of conditions which will reasonably assure the safety of any other person and the community. *See* 18 U.S.C. § 3142.

Again, despite his prior felony status precluding even the possession of firearms, and the imposition of court conditions, Davis has engaged in target practice at the gun range, and expressed to agents a willingness to shoot individuals in order to protect himself or his residence, presenting a risk of harm to members of the community. *Cf. United States v. Oliver*, Crim. No. 16-40, 2016 WL 1746853, *9 (W.D. Pa. May 3, 2016) ("It is also apparent that there is some risk that violence may occur at this particular residence given the prior burglary and Defendant's statements as to same, making his release to this residence inappropriate. At a minimum, there is a risk that Defendant will attempt to secure a firearm in order to protect his home – despite court

conditions prohibiting same."). He was also involved in cocaine trafficking and heroin was seized from his residence, both of which pose a substantial risk of harm to the community. *Id.* at *8 ("Drug trafficking certainly poses a substantial risk of harm to the community, particularly the trafficking of significant quantities of very dangerous and addictive drugs like heroin and cocaine."). Davis further admitted to being involved in the identity theft/fraud scam which similarly poses a risk of harm to the community. *Cf. United States v. Bryan*, Crim. No. 08-31, 2008 WL 4425816, at *2 (W.D. Pa. Sept. 30, 2008) ("Therefore, this the Court finds that there is a serious danger that Defendant will continue to commit crimes similar to the one charged in this case if he is released. He is charged with what amounts to fraudulent activity, and his prior convictions were both also for fraud."). Such conduct, viewed collectively, demonstrates that the release of the defendant on bond would pose an unreasonable risk of harm to the community.

All told, this factor weighs convincingly in favor of the Government and against Davis' position.

For all of these reasons,

IT IS HEREBY ORDERED that Defendant's Motion [37] is DENIED;

IT IS FURTHER ORDERED that Defendant shall remain detained in the custody of the Attorney General or a designated represented in confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal;

IT IS FURTHER ORDERED that Defendant must be afforded a reasonable opportunity

to consult privately with defense counsel; and,

FINALLY, IT IS ORDERED that on order of a United States Court or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to the United States Marshal for a court appearance.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc/ecf: All Counsel of Record

Iklas Davis (USMS # 38681068) c/o Sally Frick, Esquire

Pretrial Services/Probation Office

U.S. Marshal